### BRITISH AMERICA ASSUR. CO. v. DARRAGH.

(Circuit Court of Appeals, Fifth Circuit. February 9, 1904.)

No. 1,262.

1. INSURANCE—ARBITRATION—RIGHT TO SUE.

Where a fire insurance policy provided that in the event of a disagreement as to the amount of the loss the loss should be ascertained by appraisers, and after loss an agreement was made, in which the only thing submitted to arbitration was the extent of the damage, the insurer's liability being expressly reserved, such arbitration agreement was no bar to insured's right of action on the policy. -

2. SAME—COLLATERAL AGREEMENT.

Where a fire policy provided for arbitration only in the event of a disagreement as to the amount of the loss, and after loss, but before there had been any attempt to agree on the amount thereof, it was agreed to submit the amount of the loss to arbitration, such agreement was a substantial departure from and independent of the policy, and avoided the effect of the policy provision.

3. SAME—ATTEMPT TO ARBITRATE—TERMINATION—ESTOPPEL.

Where, after loss under a policy, and before any disagreement as to the amount thereof, the parties agreed to submit the loss to arbitration, and two arbitrators were appointed, but the arbitration failed by reason of the withdrawal of insured's arbitrator because of the failure of the arbitrator appointed by insurer to act with reasonable dispatch, and insurer failed to object to such withdrawal, it was estopped from thereafter insisting that insured was barred by such abortive arbitration from suing on the policy.

---

¶ 1. Conditions of insurance policy as to arbitration, see notes to Mutual Fire Ins. Co. v. Alvord, 9 C. C. A. 628; Pillsbury-Washburn Flour Mills Co. v. Eagle, 30 C. C. A. 389.

See Insurance, vol. 28, Cent. Dig. § 1431.

4. SAME—UMPIRE—DELEGATION OF AUTHORITY.

Where an umpire was appointed to determine disagreements between arbitrators appointed to determine an insurance loss, such appointment was a personal trust, and it was therefore improper for him to base his conclusions on facts reported to him by one of his employés.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Chas. P. Cocke, W. W. Howe, John Clegg, and Lamar C. Quintero, for plaintiff in error.

Harry H. Hall, for defendant in error.

Before McCORMICK and SHELBY, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. In August, 1901, Mrs. J. L. Darragh secured from the plaintiff in error and other insurance companies insurance on her sugar house and machinery on Justine plantation in parish of St. Mary. The aggregate amount insured by the several policies was $42,000. In December of the same year the sugar house and machinery of Mrs. Darragh were destroyed by fire. The insurance not having been paid, an action was brought in the Circuit Court for the Eastern District of Louisiana on the policy of the plaintiff in error, it being agreed between counsel for the litigant parties that one case should be tried, and thus determine the controversy.

The ground of defense is based upon a clause of the policy, which is as follows:

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss."

It does not appear from the evidence that there was any effort to reach an agreement as to the amount of loss, or that there was any disagreement between Mrs. Darragh and the insurance companies on this subject. On January 10, 1902, Mrs. Darragh and Mr. Cooke, who represented the insurance companies, signed what is termed a "nonwaiver agreement." The effect of this paper may be gathered from its last clause:

"The intent of this agreement is to preserve the rights of all parties hereto, and provide for an investigation of the fire and the determination of the amount of the loss or damage, without regard to the liability of the party of the first part."

It appears from this, and otherwise throughout the record, that at no time did the insurance companies admit liability. On the same day on which the "nonwaiver agreement" was made Mrs. Darragh and the insurance companies entered into the following agreement:

"That A. F. Slangerup and A. N. Hadley shall appraise and ascertain the sound value of and the loss upon the property damaged and destroyed by the fire of the 23rd of December, 1901, as specified below.

"Provided, that the said appraisers shall first select a competent and disinterested umpire, who shall act with them in matters of difference only.

"The award of any two of them, made in writing, in accordance with this agreement, shall be binding upon both parties to this agreement as to the amount of such loss.

"It is expressly understood that the said agreement and appraisement is for the purpose of ascertaining and fixing the amount of sound value and the loss and damage only to the property hereinafter described, and shall not determine, waive or invalidate, any other right or rights of the parties to this agreement.

"And it is further expressly understood and agreed that, in determining the sound value and the loss or damage upon the property hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location, or otherwise, a proper deduction shall be made."

Four days later, namely, on January 14th, Slangerup and Hadley were sworn as appraisers, and they selected Lewis Johnson, of New Orleans, to act as umpire "to settle matters of difference that exist between us by reason of and in compliance with the foregoing agreement and appointment." When Mrs. Darragh brought her action, this last agreement was relied upon by the insurance company as a bar to her right of action. An exception, as it is termed under the Louisiana practice, or plea in bar, as it might be termed elsewhere, was presented setting out this defense. An issue having been joined on this plea, evidence was submitted, and the jury, under the instructions of the court, found the plea bad. The action then proceeded before another jury, and after full hearing a verdict was rendered for the plaintiff in the court below against the defendant company for $5,000— that being the full amount of the policy. Under the agreement between the parties, this verdict, if sustained, will entitle Mrs. Darragh to recover upon the several policies the full amount of the insurance thereby granted, aggregating $42,000. After verdict and judgment on the last trial, the plaintiff in error sued a writ of error to this court, not to the action of the court and jury on the last trial, but to the verdict and judgment on the first trial involving the plea in bar.

There are numerous exceptions, but they all depend on the determination of this question: Under the facts of this case, was the plaintiff debarred from prosecuting her remedy at law to have the liability of the insurance companies determined, and to recover insurance for the loss which she had sustained, because of the stipulation for an appraisement in the policy above set forth, or because of the agreement to submit to Slangerup, appointed by the insured, and Hadley, appointed by the insurers, and Johnson as umpire, the question of loss which the insured had sustained? Whatever may be the effect, generally, of a stipulation in a policy of insurance providing for an appraisement of the loss sustained, in which it is also stipulated that no right of action shall inure to the insured until the appraisement has been made, it is quite clear to the court, under the facts of this case, that the agreement upon which the plaintiff in error here relies cannot be regarded as a bar to Mrs. Darragh's right of action. At no time did the defendant companies admit their liability, and as late as February 15, 1902, the general agents of several of the insurance companies wrote to Mrs. Darragh, as follows:

"As a matter of fact, we are not in position, at this time, to admit any liability whatever, under the policies; we are not in possession of all the facts,

but from information which we have received, we have been led to believe that the companies are not liable."

The agreement for particular persons to arbitrate into which Mrs. Darragh and the plaintiff in error entered was expressly restricted to the ascertainment of sound value and loss and damage only, and the rule is clear that "where it is agreed that an award shall have no reference to any other question than the estimate of damage done, the assured properly brings an action on the policy, and not on the award." May on Insurance (4th Ed.) § 493. Mrs. Darragh all the while was pressing for the collection of her insurance. Even had the award been made, there was no reason why her proceeding at law should have been barred. Said the Supreme Court of Massachusetts in Soars v. Home Insurance Company, 140 Mass. 345, 5 N. E. 149:

"The award has reference merely to the damages. The agreement of submission merely refers to arbitrators, the appraisal and estimate of the damage by fire to the plaintiff's property, and expressly provides that the award shall have no reference to any other question or matter of difference, and shall be 'of binding effect only so far as regards the actual cash value or damage to such property.' A valid award under this submission might be evidence of the damages in any action upon the policy; but it is too clear to admit of any discussion that the only action of the plaintiff must be upon the policy, and not upon the award."

There are, however, infirmities of even more gravity in the case of plaintiff in error. The policy provides for arbitration only in the event of disagreement as to the amount of loss. It appears neither from the evidence nor from the agreement actually made that there had been any disagreement on this subject. The agreement to arbitrate actually signed provided therefore for an independent arbitration in anticipation of a possible disagreement. This clause of the policy provides that "the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage." The agreement signed provides, in addition to this, that "the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location, or otherwise, a proper deduction shall be made." Now, a stipulation in a standard policy like that on which action is brought, by which it is sought to deprive the insured of her right of action, is in derogation of common right, and under the familiar rule will be strictly construed. It follows that any substantial departure therefrom will make the agreement in which such departure appears collateral with and independent of the policy, and will avoid the effect of the latter instrument. It is to close the doors of the courts to the insured whose property has been damaged or destroyed.

But, had this agreement to arbitrate the loss been in strict accordance with the terms of the policy, it cannot, under the facts of this case, be regarded as a bar to Mrs. Darragh's right of action. It is very clear from the evidence submitted to the jury that not only was there no appraisement of the loss sustained, but that nothing was done which can be regarded as an attempt in good faith to make such an appraise-

ment. A portion of the oral evidence upon this point was in conflict. This conflict was for the jury, and by their verdict they have settled it in favor of Mrs. Darragh. Much evidence was submitted in writing. This was in the form of letters written by the appraiser, parties, and their agents and attorneys, while the matter was pending, dum fervet opus. All the while Mrs. Darragh is urgent for the action of the appraisers. On January 27, 1902, her attorney, Mr. Charles O'Neil, writes to the adjuster of the various insurance companies:

"Mr. Hadley, the appraiser representing the insurance companies, has gone to Mexico, without submitting his estimates, and although he expects to return within two weeks, it may be that he will be away longer. We are not willing to wait indefinitely, especially without knowing whether you intend to deny liability or not.

"Mrs. Darragh's mortgage creditor is interested in these policies and the delay in their settlement has caused and is still causing severe annoyance and loss to Mrs. Darragh."

Two days later the adjuster answers this earnest letter as follows:

"Replying to your oracular letter of the 27th inst., I beg leave to say that we know of no condition of our contracts requiring answer, at this time in any event, to your various queries. Expressly reserving all of our rights, and without waiver of any description, we remain. yours respectfully."

On February 3, 1902, Slangerup, one of the appraisers, writes to Mrs. Darragh, through her agent, Mr. M. F. Tiernan:

"Dear Sir: I have earnestly endeavored to get Mr. Hadley to arrive at some reasonable agreement as to the value and losses of your sugar house and machinery, but he was too busy while in this city with his own business, that of purchasing of machinery for Mexico, that he could devote very little time, in fact, the only thing that he did was to figure out the loss of the building, which was so radically wrong, that I was compelled to employ a builder to figure out the lumber and cost of the building. In order to get at anything like the value and loss we visited Justine plantation (as you know), arriving there on a Saturday, and Mr. Hadley left Justine on Sunday at noon for Mexico.

"As it is impossible to know when he will return, and, as it will be impossible for me to be in readiness at any time that it may suit Mr. Hadley's convenience to come here, for this reason I ask you to relieve me of any further connection with this appraisement."

On February 15th, as we have seen, the insurance companies wrote a letter, in which they state substantially that they deny liability, and on February 20th the adjuster above mentioned, a Mr. Cooke, wrote to Mrs. Darragh a letter which contains the following statement:

"I note that your appraiser has withdrawn; he should not have been appointed. You have the right to now name a competent and disinterested appraiser in his stead."

On March 3d Mrs. Darragh replied to Mr. Cooke as follows:

"I have your favor of February 20th inst., suggesting that in view of the refusal of Mr. Slangerup to act further as an appraiser, I have the right to name a competent and disinterested appraiser in his stead. I have been subjected to so much annoyance and delay in the matter of this appraisement, and have been so impressed by the failure of the appraisers agreed upon to reach any result, that I am unwilling to proceed further under our agreement.

"Mr. Slangerup refuses to devote any more of his time to the matter, and has resigned, and Mr. Hadley has gone to Mexico.

"Our agreement was to submit to these two men. There is no general agreement to submit to any one else. I signed at the same time, a non-waiver agreement.

"I now decline to make any new agreement to arbitrate, and withdraw my non-waiver agreement. You have my proofs of loss which I assume to be satisfactory. You have the right under the policy to call for an appraisement in case of disagreement as to the amount of loss. Should you make such demand, I shall cheerfully comply with it."

From all of this it appears that not only was there no appraisement and no disagreement, but that, before his duties were well entered upon, Mrs. Darragh's appraiser withdrew, and that his withdrawal was not objected to by the defendant companies. This, in our judgment, estops them from now insisting that this abortive and imperfect arbitration should conclude the rights of the insured. But even then Mrs. Darragh makes it clearly to appear that, while she will no longer assent to, an independent arbitration like that which has given her so much trouble, she yet recognizes the rights of the insurers to call for an appraisement under the policy in case of disagreement as to the amount of loss; and even at this late day she says, "Should you make such a demand, I shall cheerfully comply with it." Slangerup, Mrs. Darragh's arbitrator, at this time was dying of cancer of the throat. He died, indeed, before the action was tried. His testimony, which the jury accepted as true, must have been given by him with full knowledge of approaching dissolution. He testifies plainly and unmistakably to the effect that the duties of the appraisers were never performed before his withdrawal, and that there had been no such disagreement as would have justified the appearance and action of the umpire. It further appears that, notwithstanding the earnest objections of Mrs. Darragh to his withdrawal, it was compelled by the conduct of the appraiser for the plaintiff in error. Notwithstanding all of this, thereafter Mr. Hadley, the arbitrator for the insurance companies, and Mr. Johnson, the umpire, reached an agreement as to the amount of loss, which is nearly ten thousand dollars less than the agreed value of the property insured and the amount of the insurance appearing on the face of the policies. It is to be observed that at the time this action was taken and this estimate made Mrs. Darragh had no appraiser, and her interests were not represented in any manner. It is to be further observed that the appointment of Mr. Johnson as umpire was a personal trust, and, if all else had been regularly done, this would have required his personal participation in the ascertainment of the loss sustained. But Mr. Johnson was otherwise engaged, and sent one of his employés to make a report upon which his own conclusions were based. It is not by proceedings of this character that Mrs. Darragh can be debarred her constitutional right to seek established justice by suitable application to the court having jurisdiction.

The exceptions having been confined to the trial of the plea in bar, no exceptions or assignments of error having been presented on the trial of the case upon its merits, and no error appearing in the action of the court or in the verdict of the jury, the judgment of the Circuit Court is affirmed.